**EXHIBIT A**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| RODRIGUEZ LAW GROUP INC.<br>Patricia Rodriguez, Esq. (270639)<br>1961 W. HUNTINGTON DRIVE SUITE 201<br>ALHAMBRA, CA 91801<br>TELEPHONE NO.: 626-282-0500   FAX NO.: 626-282-0522<br>ATTORNEY FOR *(Name)*: Plaintiff: Erik Rueppel and April Rueppel | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Santa Cruz
STREET ADDRESS: 701 Ocean Street
MAILING ADDRESS: (same as above)
CITY AND ZIP CODE: Santa Cruz, CA. 95060
BRANCH NAME: Santa Cruz Courthouse

CASE NAME:

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited  ☐ Limited<br>(Amount       (Amount<br>demanded      demanded is<br>exceeds $25,000)  $25,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☑ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is  ☑ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a.☑ monetary  b.☑ nonmonetary; declaratory or injunctive relief  c.☑ punitive
4. Number of causes of action *(specify)*:  Nine
5. This case ☐ is  ☑ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 9/11/2015

Patricia Rodriguez, Esq.
(TYPE OR PRINT NAME)                                    ▶                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the*
    *case involves an uninsured*
    *motorist claim subject to*
    *arbitration, check this item*
    *instead of Auto)*

**Other PI/PD/WD (Personal Injury/**
**Property Damage/Wrongful Death)**
**Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or*
    *toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil*
    *harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer*
        *or wrongful eviction)*
    Contract/Warranty Breach–Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage *(not provisionally*
    *complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent*
    *domain, landlord/tenant, or*
    *foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal*
    *drugs, check this item; otherwise,*
    *report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.**
**Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex*
    *case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment *(non-*
        *domestic relations)*
    Sister State Judgment
    Administrative Agency Award
        *(not unpaid taxes)*
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified*
    *above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-*
        *harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified*
    *above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
        Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

> *FOR COURT USE ONLY*
> *(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Additional Parties Attachment form is attached

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ERIK RUEPPEL and APRIL RUEPPEL

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* Superior Court-Santa Cruz County | **CASE NUMBER:** *(Número del Caso):* |
|---|---|

701 Ocean Street
Santa Cruz, CA. 95060

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Patricia Rodriguez (SBN 270639) 1961 W Huntington Drive Ste 201, Alhambra, CA 91801(626) 888-5206

| DATE: *(Fecha)* | Clerk, by *(Secretario)* _____ | , Deputy *(Adjunto)* |
|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons *(form POS-010)*.)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):*

   under: ☑ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)          ☐ CCP 416.90 (authorized person)

   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

SUM-200(A)

| SHORT TITLE:<br>RUEPPEL v. RESURGENT MORTGAGE SERVICING, ET. AL. | CASE NUMBER: |
|---|---|

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

RESURGENT MORTGAGE SERVICING; SHELLPOINT MORTGAGE SERVICING; THE BANK OF NEW YORK AS TRUSTEE FOR CWALT 2005-16; and DOES 1 through 10, INCLUSIVE,

Page _____ of _____

Page **1** of **1**

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

1   Patricia Rodriguez SBN: 270639
2   RODRIGUEZ LAW GROUP, INC.
    1961 Huntington Drive, Suite 201
3   Alhambra, CA 91801
    Office: (626) 888-5206
4   Fax: (626) 282-0522

5   Attorney for Plaintiff
    ERIK RUEPPEL and APRIL RUEPPEL

6

7                   SUPERIOR COURT OF CALIFORNIA

8                   FOR THE COUNTY OF SANTA CRUZ

9   ERIK RUEPPEL, an individual          Case No.:
10  APRIL RUEPPEL, an individual
                                         **VERIFIED COMPLAINT FOR**
11              Plaintiffs,              **DAMAGES AND EQUITABLE RELIEF**

12      vs.                              1.   VIOLATION OF CALIFORNIA CIVIL
13                                            CODE § 2923.4

14  RESURGENT MORTGAGE              2.   VIOLATION OF CALIFORNIA CIVIL
    SERVICING; SHELLPOINT                CODE § 2923.7
15  MORTGAGE SERVICING; THE BANK
    OF NEW YORK AS TRUSTEE FOR     3.   VIOLATION OF CALIFORNIA CIVIL
16  CWALT 2005-16; and DOES 1 through    CODE § 2429.10
    10, INCLUSIVE,
17                                  4.   VIOLATION OF THE CODE OF
18              Defendants.             FEDERAL REGULATIONS, TITLE 12,
                                        CHAPTER X § 1024.41(b)(1)
19
20                                  5.   VIOLATION OF THE CODE OF
21                                      FEDERAL REGULATIONS, TITLE 12,
                                        CHAPTER X § 1024.41(b)(2)(i)(A)
22
23                                  6.   VIOLATION OF THE CODE OF
24                                      FEDERAL REGULATIONS, TITLE 12,
                                        CHAPTER X § 1024.41(b)(2)(i)(B)
25
26                                  7.   VIOLATION OF THE CODE OF
27                                      FEDERAL REGULATIONS, TITLE 12,
                                        CHAPTER X § 1024.41(b)(2)(ii)
28

                                         1
         **VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

8.   VIOLATION OF CALIFORNIA CIVIL
     CODE § 2924.11(b)

9.   BREACH OF THE CONVENANT OF
     GOOD FAITH AND FAIR DEALING

**DEMAND FOR JURY TRIAL**

## INTRODUCTION

Plaintiffs ERIK RUEPPEL and APRIL RUEPPEL ("Plaintiffs") hereby allege the following based on their personal knowledge, information and belief:

1.  At all relevant times herein, the Plaintiff has resided in the City of Aptos, County of Santa Cruz, State of California.

2.  The subject real property is situated in the County of Santa Cruz, State of California and is commonly described as 614 Cedar Street, Aptos, CA. 95003 (the "Home").

3.  Plaintiffs are informed and believe and upon such information and belief allege that Defendant SHELLPOINT MORTGAGE SERVICING was and is at all relevant times a national banking association organized under the laws of the United States and doing business in the State of California as a residential loan servicer.  Plaintiffs are informed and believe that SHELLPOINT MORTGAGE SERVICING is the current servicer of the Plaintiffs loan.

4.  Plaintiffs are informed and believe and upon such information and belief allege that Defendant RESURGENT MORTGAGE SERVICING was and is at all relevant times a national banking association organized under the laws of the United States and doing business in the State of California as a residential loan servicer.  Plaintiffs are informed and believe that RESURGENT MORTGAGE SERVICING is the former servicer of the Plaintiffs loan.

5.  Plaintiffs are informed and believe and upon such information and belief allege that Defendant THE BANK OF NEW YORK was and is at all relevant times a national banking association organized under the laws of the United States and doing business in the State of California.  Plaintiffs are informed and believe that THE BANK OF NEW

2

**VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

YORK AS TRUSTEE FOR CWALT 2005-16 is the current owner of the Plaintiffs loan.

6. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 10, and therefore sue such Defendants by such fictitious name.

7. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and, based thereon, allege that each of the fictitiously named Defendants is responsible in some manner for the injuries to Plaintiffs as alleged herein and that such injuries as herein alleged were proximately caused by such Defendants.

8. Plaintiffs are further informed and believe, and thereon allege, that at all time herein mentioned each of the Doe Defendants was the agent and/or employee of the remaining Defendants, and based on said alleged status, was/were acting within the course and scope of such agency and employment.

## FACTUAL ALLEGATIONS

9. On or about March 10, 2005, Plaintiffs entered into a loan transaction with Countrywide Bank for the purchase of the residential property commonly known as 614 Cedar Street, Aptos, California 95003. As part of the loan transaction with Countrywide Bank for the purchase of the residential property commonly known as 614 Cedar Street, Aptos, California 95003 a Deed of Trust ("Deed of Trust") dated March 10, 2005 was recorded on March 25, 2005, in the Santa Cruz County Recorder's office as Instrument No. 2005-0019890, referencing loan amount of $585,000.00 The Deed of Trust shows MIN 1001337-0002823994-8 and indicates that Countrywide Home Loans, Inc. is the servicer and lender. A true and correct copy thereof is attached hereto, marked Exhibit "A" and is incorporated herein by reference.

10. In order to protect their home from a foreclosure based on the Defendants violations of State and Federal laws which were specifically enacted to protect consumers (such as Plaintiffs) from t abusive, deceptive, and unfair conduct – Plaintiffs filed a civil lawsuit as Case Number CV 176602 in the Superior Court of California for the County of Santa Cruz.

3

**VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

The original verified complaint for case number CV 176602 was filed on April 2, 2013.

11. On or about January 8, 2014, Plaintiff's Counsel Filed an Amendment to substitute the fictitious/incorrect name of Doe 1 to RESURGENT CAPITAL SERVICES L.P. as a Defendant in Case Number CV 176602.

12. On October 23, 2014 Defendants Demurrer to Plaintiffs Second Amended Complaint in case number CV 176602 was sustained without leave to amend. Currently, case number CV 176602 is on appeal with the California Court of Appeal Sixth Appellate District as case number H041779.

13. In late 2013, during the litigation of case number CV 176602, Plaintiff's Counsel became aware that Plaintiffs home loan servicer would be changing to RESURGENT MORTGAGE SERVICING ("RESURGENT").

14. On or about January of 2014, Plaintiff's Counsel submitted a new loan modification application directly to RESURGENT MORTGAGE SERVICING. RESURGENT Representative Maisha West Responded to Plaintiffs Loan Modification submission with an email to Plaintiff's counsel requesting additional documents to complete the modification application.

15. As noted above, on or about January 8, 2014, Plaintiff's Counsel Filed an Amendment to substitute the fictitious/incorrect name of Doe 1 to RESURGENT CAPITAL SERVICES L.P. as a Defendant in Case Number CV 176602.

16. On January 15, 2014 RESURGENT informed Plaintiffs' Counsel that all communications regarding the submission of a loan modification application should go through counsel of record, REED SMITH LLP.

17. Accordingly, on January 28, 2014 after reaching out to opposing counsel at REED SMITH LLP (Mr. Daniel Ruby), Plaintiff's counsel was specifically told by Mr. Ruby to send the Plaintiffs loan modification package directly to RESURGENT.

18. Accordingly, Plaintiffs' counsel followed up with RESURGENT regarding submitted loan

4

**VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

modification documents on January 28, 2014 and February 3, 2014. RESURGENT did not provide any update to the submitted documents by Plaintiff's counsel.

19. On February 4, 2014, Attorney B. Ben Mohandesi contacted Plaintiff's Counsel and stated that his office, YU MOHANDESI LLP, would be representing RESURGENT. Counsel then stated that Plaintiffs loan modification application should be submitted through his office.

20. Accordingly, as of February 4, 2014, Counsel for Plaintiffs has contacted YU MOHANDESI LLP, (representatives of RESURGENT) to make sure Defendants had all requisite documents needed for a good faith loan modification review of Plaintiffs' file.

21. On or about February 14, 2014 Plaintiffs received a "Notice of Transfer of Servicing" from RESURGENT MORTGAGE SERVICING. This notice informed Plaintiffs SHELLPOINT MORTGAGE SERVICING would now be the servicer of their mortgage loan. A true and correct copy of the notice is attached hereto, marked Exhibit "B" and is incorporated herein by reference.

22. Over the next seventeen months and until the present day, Opposing Counsel and Representatives from RESURGENT (now SHELLPOINT) have continued a pattern of correspondence – indicating that Plaintiffs application is under review and/or Plaintiffs still need to submit additional documents for a good faith loan modification review when Plaintiffs have already submitted a full loan modification application including the same documents multiple times. It is Plaintiffs allegation and belief that these bad faith tactics were being perpetrated deliberately in order to curtail Plaintiffs' efforts at obtaining attaining a modification. It is also Plaintiffs further allegation and belief that these bad faith tactics were being perpetrated to make it easier for Defendants to profit from the unlawful sale of the Plaintiffs Home.

5

**VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

23. Specifically, the actions and non-actions of Opposing Counsel and representatives from RESURGENT (now SHELLPOINT) are shown as follows:

- On or around February 5, 2014 Plaintiffs counsel requested an update on the status of the Plaintiffs loan modification application. Opposing counsel responded by saying they would get back to counsel on the status of the loan modification.

- On or around March 5, 2014 Plaintiffs counsel requested an update on the status of the Plaintiffs loan modification application. Opposing counsel responded by saying they would call Plaintiffs' Counsel to discuss the application.

- On or around March 31, 2014 Plaintiffs counsel requested an update on the status of the Plaintiffs loan modification application. Opposing counsel responded by saying they were trying to get an update on the status of the application.

- On or around April 3, 2014 Plaintiffs counsel requested an update on the status of the Plaintiffs loan modification application. Opposing counsel responded by saying they would request a status update.

- On or around April 13, 2014 Plaintiffs counsel requested an update on the status of the Plaintiffs loan modification application. Opposing counsel responded by saying they were putting a rush on the processing of the application.

- On or around June 4, 2014 Plaintiffs counsel requested an update on the status of the Plaintiffs loan modification application. Opposing counsel responded by saying they did not have a substantive update regarding the application.

- On or around June 30, 2014 Plaintiffs counsel requested an update on the status of the Plaintiffs loan modification application. Opposing counsel responded by saying the processing of the application is a slow process and there was no substantive update.

- On or around July 24, 2014 opposing counsel responded to Plaintiffs and requested (via email) additional documents to complete the Plaintiffs loan modification application. Plaintiff's counsel submitted all requested documents on or around August 14, 2014.

- On or around August 30, 2014 Plaintiffs counsel requested an update on the status of the Plaintiffs loan modification application. Opposing counsel did not respond to Plaintiffs counsel's request.

- On or around September 14, 2014 Plaintiff's counsel requested an update on the status of the Plaintiffs loan modification application. Opposing counsel did not respond to Plaintiffs counsel's request.

- On or around September 18, 2014 opposing counsel requested (via email) additional documents to complete the Plaintiffs loan modification application. Plaintiff's counsel

6

VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

submitted all requested documents on or around October 3, 2014, October 20, 2014 and November 21, 2014.

- On or around December 12, 2014 opposing counsel requested (via email) additional documents to complete the Plaintiffs loan modification application. Plaintiff's counsel submitted all requested documents on or around February 2, 2015.

- On or around February 20, 2015 Plaintiffs counsel requested an update on the status of the Plaintiffs loan modification application. Opposing counsel responded by saying they would attempt to get an update on the status of the modification.

- On or around March 14, 2015 Plaintiffs counsel requested an update on the status of the Plaintiffs loan modification application. Opposing counsel did not respond to Plaintiffs counsel's request.

- On or around April 17, 2015 Plaintiffs counsel requested an update on the status of the Plaintiffs loan modification application. Opposing counsel did not respond to Plaintiffs counsel's request.

- On or around May 15, 2015 Plaintiffs counsel requested an update on the status of the Plaintiffs loan modification application. Opposing counsel responded by saying the review of the Plaintiffs application was ongoing.

- On or around June 5, 2015 Plaintiffs counsel requested an update on the status of the Plaintiffs loan modification application.

24. On or around June 5, 2015 Defendants Counsel informed Plaintiff's Counsel that the Plaintiffs would not be approved for a loan modification.

25. On or about June 11, 2015 Plaintiffs received a letter from RESURGENT (now SHELLPOINT) informing them that they would not be approved for a loan modification.

26. As of today's date, seventeen months after the initial submission of the Plaintiffs loan modification application,  Opposing Counsel and Representatives from RESURGENT (now SHELLPOINT) have still not provided a full update or decision regarding how the Plaintiffs application for a loan modification was denied. Instead Opposing Counsel and Representatives from RESURGENT (now SHELLPOINT) have responded to seventeen months of correspondence with a two page letter which does not give either a specific mathematical breakdown of the Plaintiffs finances as calculated by RESURGENT (now SHELLPOINT) or an explanation of how the Plaintiffs financial situation prevents them

VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

from being approved for entry into a home loan modification.

27. Additionally, it is Plaintiff's allegation and belief that Defendant RESURGENT (now SHELLPOINT) is expressly in violation of the Code of Federal Regulations for their blatant disregard and handing of the Plaintiffs fully submitted loan modification application.

28. Additionally, it is Plaintiff's allegation and belief that Defendant RESURGENT (now SHELLPOINT) is expressly in violation of <u>California Senate Bill (SB) 900</u>.

29. Overall, Defendants are trying to go forward with a foreclosure of the Plaintiffs home even though:

   • Defendant RESURGENT (now SHELLPOINT) is in violation of multiple State and Federal statutes as outlined above.

   • Defendant RESURGENT (now SHELLPOINT) is in violation of the Covenant of Good Faith and Fair Dealing.

30. Overall, Plaintiffs are informed and believe, and thereon allege, that;

   • None of the Defendants hold a perfected and secured claim in the Home;

   • Defendant RESURGENT (now SHELLPOINT) is in violation of the California Code of Civil Procedure and the Code of Federal Regulations for their blatant disregard and miss-handing of the Plaintiffs fully submitted loan modification application and;

   • All Defendants are estopped and precluded from asserting an unsecured claim against the Plaintiffs estate.

## FIRST CAUSE OF ACTION: VIOLATION OF CALIFORNIA CIVIL CODE 2923.4
### (AGAINST DEFENDANTS RESURGENT MORTGAGE SERVICING AND SHELLPOINT MORTGAGE SERVICING)

31. Plaintiffs incorporate herein by reference all allegations in all paragraphs of this Complaint, inclusive, as though fully set forth herein.

32. Plaintiffs are informed and believe and thereon allege that California Civil Code 2923.4 requires that a Bank undertake a meaningful review of borrower for loss mitigation options upon submission of a loan modification application. California Civil Code 2923.4 expressly notes *to ensure that, as part of the nonjudicial foreclosure process, borrowers are*

8

**VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

*considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure" California Civil Code 2923.4*

33. Defendant RESURGENT (now SHELLPOINT) did not undertake a meaningful review of borrower for loss mitigation options upon submission of a loan modification application, rather Defendant purported to review Plaintiffs and even purported to offer a modification, yet has still not provided any writings showing a meaningful review or offer of loan modification.

34. Therefore, Defendant RESURGENT (now SHELLPOINT) is in violation of the California Civil Code and is attempting to foreclose on the Plaintiffs property without any legal authority or standing to do so, and in violation of State laws which were specifically enacted to protect consumers such as Plaintiffs from the type of abusive, deceptive, and unfair conduct in which Defendant engaged. Defendants' unlawful conduct has caused Plaintiffs damages in an amount to be proven at trial.

**SECOND CAUSE OF ACTION: VIOLATION OF CALIFORNIA CIVIL CODE 2923.7**
(AGAINST DEFENDANTS RESURGENT MORTGAGE SERVICING AND
SHELLPOINT MORTGAGE SERVICING)

35. Plaintiffs incorporate herein by reference all allegations in all paragraphs of this Complaint, inclusive, as though fully set forth herein.

36. Plaintiffs are informed and believe and thereon allege that California Civil Code 2923.7 requires that a Bank must provide a single point of contact for all borrowers who request and are being reviewed for a loan modification (or other loss mitigation alternatives). California Civil Code 2923.7 expressly notes *"Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact." California Civil Code 2923.7(a)*

37. Defendant RESURGENT (now SHELLPOINT) did not provide a single point of contact for the Plaintiffs upon their request to be reviewed for a loan modification.

38. Therefore, Defendant RESURGENT (now SHELLPOINT) is in violation of the California Civil Code and is attempting to foreclose on the Plaintiffs property without any legal authority or standing to do so, and in violation of State laws which were specifically

9

1    enacted to protect consumers such as Plaintiffs from the type of abusive, deceptive, and

2    unfair conduct in which Defendant engaged. Defendants' unlawful conduct has caused

3    Plaintiffs damages in an amount to be proven at trial.

### THIRD CAUSE OF ACTION: VIOLATION OF CALIFORNIA CIVIL CODE 2429.10
#### (AGAINST DEFENDANTS RESURGENT MORTGAGE SERVICING AND SHELLPOINT MORTGAGE SERVICING)

39. Plaintiffs incorporate herein by reference all allegations in all paragraphs of this Complaint, inclusive, as though fully set forth herein.

40. Plaintiffs are informed and believe and thereon allege that California Civil Code 2429.10 requires that a Bank must provide written acknowledgement (within five business days) of receipt loan modification application. California Civil Code 2429.10 expressly notes *"When a borrower submits a complete first lien modification application or any document in connection with a first lien modification application, the mortgage servicer shall provide written acknowledgment of the receipt of the documentation within five business days of receipt."* California Civil Code 2924.10(a)

41. Defendant RESURGENT (now SHELLPOINT) did not provide written acknowledgement within five business days of receipt of the Plaintiffs loan modification application.

42. Therefore, Defendant RESURGENT (now SHELLPOINT) is in violation of the California Civil Code and is attempting to foreclose on the Plaintiffs property without any legal authority or standing to do so, and in violation of State laws which were specifically enacted to protect consumers such as Plaintiffs from the type of abusive, deceptive, and unfair conduct in which Defendant engaged. Defendants' unlawful conduct has caused Plaintiffs damages in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION: VIOLATION OF CODE OF FEDERAL REGULATIONS 12 C.F.R. 1024.1(b)(1)
#### (AGAINST DEFENDANTS RESURGENT MORTGAGE SERVICING AND SHELLPOINT MORTGAGE SERVICING)

43. Plaintiffs incorporate herein by reference all allegations in all paragraphs of this Complaint, inclusive, as though fully set forth herein.

44. Plaintiffs are informed and believe and thereon allege that Reg. X, 12 C.F.R. § 1024.41(b)(1) requires that when a servicer deems the loss mitigation application to be incomplete, the servicer must act affirmatively to complete the application. The servicer

10

**VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

must exercise "reasonable diligence" to obtain any documents and information it claims to require to complete the application.

45. Reg. X, 12 C.F.R. § 1024.41(b)(1) expressly notes "*A complete loss mitigation application means an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower. A servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application*" Reg. X, 12 C.F.R. § 1024.41(b)(1).

46. Defendant RESURGENT (now SHELLPOINT) did not act affirmatively to complete the Plaintiffs loan modification application. Also, RESURGENT (now SHELLPOINT) and did not exercise reasonable diligence to obtain any documents/information to complete the Plaintiffs loan modification application.

47. Therefore, Defendant RESURGENT (now SHELLPOINT) is in violation of the Code of Federal Regulations and is attempting to foreclose on the Plaintiffs property without any legal authority or standing to do so, and in violation of State laws which were specifically enacted to protect consumers such as Plaintiffs from the type of abusive, deceptive, and unfair conduct in which Defendant engaged. Defendants' unlawful conduct has caused Plaintiffs damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION: VIOLATION OF CODE OF FEDERAL REGULATIONS 12 C.F.R. 1024.1(b)(2)(i)(A)
### (AGAINST DEFENDANTS RESURGENT MORTGAGE SERVICING AND SHELLPOINT MORTGAGE SERVICING)

48. Plaintiffs incorporate herein by reference all allegations in all paragraphs of this Complaint, inclusive, as though fully set forth herein.

49. Plaintiffs are informed and believe and thereon allege that Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(A) requires that when a Bank is made aware of a communication that can reasonably be deemed to be an application for loss mitigation, the servicer must promptly conduct a review to determine whether the communication represents a complete or an incomplete application. Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(A) expressly notes "*if a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall: (A) Promptly upon receipt of a loss mitigation application, review the loss*

11

*mitigation application to determine if the loss mitigation application is complete"* Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(A)

50. Defendant RESURGENT (now SHELLPOINT) did not conduct a review to determine whether the Plaintiffs submitted loan modification application represented a complete or an incomplete loan modification application.

51. Therefore, Defendant RESURGENT (now SHELLPOINT) is in violation of the Code of Federal Regulations and is attempting to foreclose on the Plaintiffs property without any legal authority or standing to do so, and in violation of State laws which were specifically enacted to protect consumers such as Plaintiffs from the type of abusive, deceptive, and unfair conduct in which Defendant engaged. Defendants' unlawful conduct has caused Plaintiffs damages in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION: VIOLATION OF CODE OF FEDERAL REGULATIONS 12 C.F.R. 1024.1(b)(2)(i)(B)**
(AGAINST DEFENDANTS RESURGENT MORTGAGE SERVICING AND SHELLPOINT MORTGAGE SERVICING)

52. Plaintiffs incorporate herein by reference all allegations in all paragraphs of this Complaint, inclusive, as though fully set forth herein.

53. Plaintiffs are informed and believe and thereon allege that Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(B) requires (1) if the servicer determines that the application for loss mitigation is complete, it must send the borrower a notice acknowledging that the application is complete within five business days of receipt of the application and (2) The servicer must provide a written notice to the borrower describing the documents and information needed to complete the application.

54. Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(B) expressly notes:

- *"Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete. If a loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date pursuant to paragraph (2)(ii) of this section"* Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(B)

---

12

**VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

55. Defendant RESURGENT (now SHELLPOINT) did not send the Plaintiffs a notice acknowledging that their loan modification application was complete within five business days of receipt of the Plaintiffs loan modification application. RESURGENT (now SHELLPOINT) did not provide a written notice to Plaintiffs or Plaintiffs' counsel describing the documents and information needed to complete the application.

56. Therefore, Defendant RESURGENT (now SHELLPOINT) is in violation of the Code of Federal Regulations and is attempting to foreclose on the Plaintiffs property without any legal authority or standing to do so, and in violation of State laws which were specifically enacted to protect consumers such as Plaintiffs from the type of abusive, deceptive, and unfair conduct in which Defendant engaged. Defendants' unlawful conduct has caused Plaintiffs damages in an amount to be proven at trial.

### SEVENTH CAUSE OF ACTION: VIOLATION OF CODE OF FEDERAL REGULATIONS 12 C.F.R. 1024.1(b)(2)(ii)
(AGAINST DEFENDANTS RESURGENT MORTGAGE SERVICING AND SHELLPOINT MORTGAGE SERVICING)

57. Plaintiffs incorporate herein by reference all allegations in all paragraphs of this Complaint, inclusive, as though fully set forth herein.

58. Plaintiffs are informed and believe and thereon allege that Reg. X, 12 C.F.R. § 1024.41(b)(2)(ii) requires that the written notice outlined in Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(B) must include a reasonable date from the Bank by which the borrower should submit the missing documents and information. Reg. X, 12 C.F.R. § 1024.41(b)(2)(ii) expressly notes *"The notice required pursuant to paragraph (b)(2)(i)(B) of this section must include a reasonable date by which the borrower should submit the documents and information necessary to make the loss mitigation application complete" Reg. X, 12 C.F.R. § 1024.41(b)(2)(ii)*

59. Defendant RESURGENT (now SHELLPOINT) did not (1) provide the written notice outlined in Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(B) and (2) did not provide a reasonable date from the Bank by which the borrower should submit the missing documents and information.

60. Therefore, Defendant RESURGENT (now SHELLPOINT) is in violation of the Code of Federal Regulations and is attempting to foreclose on the Plaintiffs property without any

13

**VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

legal authority or standing to do so, and in violation of State laws which were specifically enacted to protect consumers such as Plaintiffs from the type of abusive, deceptive, and unfair conduct in which Defendant engaged. Defendants' unlawful conduct has caused Plaintiffs damages in an amount to be proven at trial.

### EIGHTH CAUSE OF ACTION: VIOLATION OF CALIFORNIA CIVIL CODE SECTION 2924.11 (b)
### (AGAINST DEFENDANTS RESURGENT MORTGAGE SERVICING AND SHELLPOINT MORTGAGE SERVICING)

61. Plaintiffs incorporate herein by reference all allegations in all paragraphs of this Complaint, inclusive, as though fully set forth herein.

62. Plaintiffs are informed and believe and thereon allege that Cal Civ. Code Section 2924.11(b) states, in pertinent part, that: *"Following the denial of a first lien loan modification application, the mortgage servicer shall send a written notice to the borrower identifying with specificity the reasons for the denial and shall include a statement that the borrower may obtain additional documentation supporting the denial decision upon written request to the mortgage servicer."* Cal Civ. Code Section 2924.11(b)

63. On or about June 11, 2015 Defendant RESURGENT (now SHELLPOINT) did send a written notice to the Plaintiffs informing them that they would not be approved for a loan modification. However, the letter sent by Defendant RESURGENT (now SHELLPOINT) did not specifically identify the reasons for the loan modification denial and did not include a statement that the borrower may obtain additional documentation supporting the denial decision.

64. Therefore, Defendant RESURGENT (now SHELLPOINT) is in violation of Cal Civ. Code Section 2924.11(b) and is attempting to foreclose on the Plaintiffs property without any legal authority or standing to do so, and in violation of State laws which were specifically enacted to protect consumers such as Plaintiffs from the type of abusive, deceptive, and unfair conduct in which Defendant engaged. Defendants' unlawful conduct has caused Plaintiffs damages in an amount to be proven at trial.

14

**VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

### NINTH CAUSE OF ACTION:
### VIOLATION OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
(AGAINST ALL DEFENDANTS)

65. Plaintiffs incorporate herein by reference all allegations in all paragraphs of this Complaint, inclusive, as though fully set forth herein.

66. It is Plaintiffs allegation that the loan Defendants purportedly own and service in this matter implied obligations to act in good faith toward the Plaintiffs in carrying out the purpose and intent of the contractual agreement, including the enforcement of the agreement between them and the borrowers.

67. The obligations contemplated by the contract were that Defendants would enforce only the legal terms of the contract, and not unconscionable terms. Plaintiffs allege that Defendants breached those implied contractual obligations, by violating multiple State and Federal statutes outlined above through the blatant miss-handing of the Plaintiffs fully submitted loan modification application.

68. As a direct and proximate cause of the breach of the covenant of good faith and fair dealing, Plaintiffs have and will continue to suffer economic damages in an amount to be determined at time of trial, but is believed to exceed the fair market value of the Property.

15

**VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for judgment against the Defendants and each of them as follows:

1. For all compensatory damages incurred according to proof;

2. For all consequential damages incurred according to proof ;

3. For all special damages according to proof;

4. For punitive damages sufficient to punish the Defendants and act as a deterrent to others;

5. For all statutory damages as applicable;

8. For any prejudgment or other interest according to law;

9. For costs and reasonable attorney's fees; and

10. For such other relief that the court may deem just and proper.


Dated: August 7, 2015                                    RODRIGUEZ LAW GROUP INC.


By: Patricia Rodriguez, Esq.
Attorneys for Plaintiffs
ERIK RUEPPEL; APRIL RUEPPEL

16
**VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

<u>VERIFICATION</u>

We, ERIK RUEPPEL and APRIL RUEPPEL, are the Plaintiffs in this action. We are informed and believe and on that ground allege that matters stated herein are true.

We declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on   8 · 10 · 15   in   Aptos   , California.


ERIK RUEPPEL


APRIL RUEPPEL

17

**VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

# EXHIBIT A

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

2005-0019890

Recording Requested By:
D. User

| Recorded | |
|---|---|
| Official Records | REC FEE    78.00 |
| County Of | |
| SANTA CRUZ | |
| GARY E. HAZELTON | |
| Recorder | |
| CAROL D. SUTHERLAND | |
| Assistant | DLA |
| 01:17PM 25-Mar-2005 | Page 1 of 24 |

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
KITTIE M. GEARHEART

RECORDED AT THE REQUEST OF
OLD REPUBLIC TITLE COMPANY

———————— [Space Above This Line For Recording Data] ————————

[Doc ID #]

# DEED OF TRUST

MIN

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated MARCH 10, 2005          , together with all Riders to this document.

(B) "Borrower" is

ERIK RUEPPEL, AND APRIL RUEPPEL, HUSBAND AND WIFE

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 16

Initials: _____

-6A(CA) (0207)      CHL (08/02)(d)      VMP MORTGAGE FORMS - (800)521-7291      Form 3005  1/01
CONV/VA

DOC ID #:

Borrower's address is
614 CEDAR ST, SANTA CRUZ, CA 95060-4363
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
COUNTRYWIDE HOME LOANS, INC.
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada, Calabasas, CA 91302-1613
(D) "Trustee" is
CTC REAL ESTATE SERVICES
400 COUNTRYWIDE WAY, SIMI VALLEY, CA 93065
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated   MARCH 10, 2005      . The Note states that Borrower owes Lender
FIVE HUNDRED EIGHTY FIVE THOUSAND and 00/100

Dollars (U.S. $ 585,000.00       ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   APRIL 01, 2035      .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| X Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

Initials: _____

⬥ -6A(CA) (0207)      CHL (09/02)      Page 2 of 16      Form 3005 1/01

DOC ID #:

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY of SANTA CRUZ :
[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

LOT 6, IN BLOCK B, AS THE SAME IS SHOWN ON THAT CERTAIN MAP ENTITLED, "SUBDIVISION NO. 7, SEACLIFF PARK", BEING A PART OF APTOS RANCHO, SANTA CRUZ COUNTY, CALIFORNIA, SURVEYED BY LLOYD BOWMAN, COUNTY SURVEYOR, NOVEMBER 1925", FILED FOR RECORD IN THE OFFICE OF THE COUNTY RECORDER OF SANTA CRUZ COUNTY ON JANUARY 7TH, 1926, IN MAP BOOK 18, AT PAGE 70, SANTA CRUZ COUNTY RECORDS.

Parcel ID Number: 123456789                    which currently has the address of
                        614 CEDAR STREET, APTOS
                                [Street/City]
California 95003-3507 ("Property Address"):
        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

Initials:

-6A(CA) (0207)          CHL (08/02)          Page 3 of 16                    Form 3005 1/01

DOC ID #:

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

Initials:

-6A(CA) (0207)        CHL (09/02)              Page 4 of 16                          Form 3005 1/01

DOC ID #:

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

-6A(CA) (0207)          CHL (09/02)          Page 5 of 16

Initials: _____

Form 3005 1/01

DOC ID #:

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

Initials: 

-6A(CA) (0207)          CHL (08/02)          Page 6 of 16          Form 3005  1/01

DOC ID #:

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Initials:

DOC ID #:

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

Initials:

-6A(CA) (0207)        CHL (09/02)              Page 8 of 16                                Form 3005 1/01

DOC ID #:

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

-6A(CA) (0207)          CHL (08/02)                    Page 9 of 16                                    Form 3005 1/01

Initials:

DOC ID #:

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Initial:

DOC ID #:

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

DOC ID #:

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

Initials: _____

VMP®-6A(CA) (0207)          CHL (09/02)                    Page 12 of 16                                        Form 3005   1/01

DOC ID #:

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

-6A(CA) (0207)          CHL (09/02)                  Page 13 of 16          Initials: ___          Form 3005 1/01

DOC ID #:

IF Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials:

-6A(CA) (0207)          CHL (09/02)          Page 14 of 16          Form 3005  1/01

DOC ID #:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
                                        ERIC RUEPPEL                    -Borrower

_____        _____ (Seal)
                                        APRIL RUEPPEL                   -Borrower

                                        _____ (Seal)
                                                                        -Borrower

                                        _____ (Seal)
                                                                        -Borrower

-6A(CA) (0207)        CHL (09/02)        Page 15 of 15                Form 3005 1/01

DOC ID #:

State of California
County of   SANTA CRUZ                            } ss.

On  MARCH 22, 2005      before me,   CAROL HYLAND      personally appeared

ERIK KUEPPEL AND APRIL KUEPPEL

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies) and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

CAROL HYLAND
COMM. # 1325659
NOTARY PUBLIC-CALIFORNIA
SANTA CRUZ COUNTY
COMM. EXP. OCT. 25, 2005

K
Initials: _____

-6A(CA) (0207)        CHL (09/02)          Page 16 of 16          Form 3005  1/01

# EXHIBIT B

P.O. BOX 1410
TROY, MI 48099-1410
RETURN SERVICE REQUESTED

 

**RESURGENT** *Mortgage Servicing*
*A Division of Resurgent Capital Services LP*

**Shellpoint**
Mortgage Servicing



**Loan Number**
0535443915

S-SFRECS20  L-CST-SMS  A-0535443915 R-1
P3C0AC00717302 - 297366382 I34604
ERIK RUEPPEL
APRIL RUEPPEL
614 CEDAR ST
APTOS CA 95003-3507

**Property Address**
614 Cedar Street
Aptos, CA 95003

**Owner of your Loan**
BANK OF NEW YORK AS TRUSTEE FOR
CWALT 2005-16

2/14/2014

## Notice of Transfer of Servicing

Dear Valued Customer:

Effective March 1, 2014, Resurgent Mortgage Servicing will become part of Shellpoint Mortgage Servicing*, a division of New Penn Financial, LLC. This means the servicing of your mortgage loan is being transferred to Shellpoint Mortgage Servicing. This change does not affect any term or condition of the mortgage instruments, other than the terms directly related to the servicing of your loan.

**This change does not impact your mortgage.** There will be little or no impact to you as a result of this transfer. The phone number and mailing addresses you use to contact Resurgent will be the same with Shellpoint. Your loan number will remain the same as will the address you use for payments or correspondence. However, Shellpoint will collect your payments going forward. Shellpoint will start accepting payments received from you on 3/1/2014. If you have any questions about your mortgage loan or this transfer, our contact information is listed below.

- Customer Care Department Phone: (800) 365-7107
- Fax: (866) 467-1137
- Email: loanservicing@shellpointmtg.com
- Website: www.shellpointmtg.com
- Hours of Operation:  Monday - Friday / 8am - 10pm EST
  Saturday / 8am - 3pm EST

SEND WRITTEN INQUIRIES TO
Shellpoint Mortgage Servicing
P.O. Box 10826
Greenville, SC  29603-0826

SEND PAYMENTS TO
Shellpoint Mortgage Servicing
P.O. Box 19006
Greenville, SC  29602-9006

Under Federal law, during the 60-day period following the effective date of the transfer of the loan servicing, a payment received by your old servicer on or before its due date may not be treated by the new servicer as late, and a late fee may not be imposed upon you.

**Key points to remember**
- Your loan number is 0535443915, our records indicate that as of 2/14/2014 this loan has an unpaid principal balance of $618,547.25, and is due for the 2/1/2009 installment
- If you use online bill pay, please be sure to update your bill pay service with Shellpoint's name and mailing address
- If you are on ACH Draft (autopay) that information will transfer to Shellpoint
- This servicing transfer only affects this loan, it does not affect your other loans you may have with Resurgent

Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan español al número (800) 365-7107.

*Best Regards,*

*Resurgent Mortgage Servicing and Shellpoint Mortgage Servicing*

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

P I000001  A-0535443915 233760101J0400